UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION


UNITED STATES OF AMERICA,    )    CASE NO:  7:20-CR-00240
    )
          Plaintiff,    )       CRIMINAL
    )
    vs.    )      McAllen, Texas
    )
DANIEL SEPULVEDA,    )    Thursday, September 3, 2020
    )
          Defendant.    )    (11:14 a.m. to 11:44 a.m.)


REARRAIGNMENT

BEFORE THE HONORABLE RANDY CRANE,
UNITED STATES DISTRICT JUDGE



**APPEARANCES**:        SEE PAGE 2


Court Recorder [ECRO]:  Rick Rodriguez

Transcribed By:      Exceptional Reporting Services, Inc.
                P.O. Box 8365
                Corpus Christi, Texas 78468
                361 949-2988







Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES FOR</u>:


For Plaintiff:                    PATRICIA PROFIT, ESQ.
                                  Assistant United States Attorney
                                  1701 W. Business Hwy. 83
                                  Suite 600
                                  McAllen, TX 78501


For Defendant:                    DANIEL A. SANCHEZ, ESQ.
                                  501 E. Tyler
                                  Harlingen, TX 78550


U.S. Probation:                   Esmeralda Ramirez
                                  1701 W. Business Hwy. 83
                                  Suite 729
                                  McAllen, Texas 78501

1       **McAllen, Texas; Thursday, September 3, 2020; 11:14 a.m.**

2                          **(Video Conference)**

3                          **(Call to Order)**

4            **THE COURT:**  And so let me call for announcements.

5    This a 20-cr-240-1; U.S.A. versus Daniel Sepulveda.

6            Announcements from the Government, first.

7            **MS. PROFIT:**  The Government is present and ready,

8    your Honor.

9            **THE COURT:**  And for the Defendant.

10           You're on mute, Mr. Sanchez.

11           **MR. SANCHEZ:**  Good morning, your Honor.  Dan Sanchez

12   for Daniel Sepulveda.  We're present and ready.

13           **THE COURT:**  All right.  Mr. Sepulveda, can you hear

14   us okay?

15           **THE DEFENDANT:**  Yes, sir.

16           **THE COURT:**  And you speak English?

17           **THE DEFENDANT:**  Yes, sir.

18           **THE COURT:**  All right.  So, as you know, you're at

19   the detention center up in Brooks County.  I'm down here at the

20   courthouse, in McAllen.

21           We've arranged to have your hearing by video just to

22   protect your health and safety from the spread of the

23   coronavirus.

24           You're not required to have your hearing by video.

25   If you would prefer to come to the courthouse, then we can make

4

1    special arrangements.  But there will probably be a delay of a

2    couple of months before we're able to do that.

3            But if you're in agreement, we can just proceed this

4    morning with a video hearing.  I just need to ask your

5    permission.

6            Are you okay with us – or agree with us going by

7    video?

8            **THE DEFENDANT:**  Yes, sir.

9            **THE COURT:**  All right.  Then if you could please

10   raise your right hand at this time to be administered the oath.

11       **(Defendant Sworn)**

12           **THE COURT:**  All right.  And, Mr. Sepulveda, you're

13   now under oath.  This just means you're required to answer my

14   question truthfully.  And if you do not answer all of them

15   truthfully, then you can be later prosecuted for committing

16   perjury or for making a false statement.

17           I was told that you intent to plead guilty to one of

18   the charges that's against you.  Before I can accept your plea

19   of guilty, I just need to make certain that it's done of your

20   own free will and in accordance with the law.

21           And that's because, when you plead guilty, you do

22   give up some important rights.

23           I'm going to  --

24           **MS. PROFIT:**  Your Honor?

25           **THE COURT:**  Yes?

5

1               **MS. PROFIT:**  He has to plead to both counts; and

2    there is no plea agreement.

3               **THE COURT:**  Okay.  Again, so I'm going to explain

4    many of your rights to you here this morning.  If at any point,

5    you don't understand something that I say, just let me know,

6    and I'll be happy to explain myself.

7               Let's start with, if you could state your full name,

8    please.

9               **THE DEFENDANT:**  Dan Sepulveda.

10              **THE COURT:**  And how old are you?

11              **THE DEFENDANT:**  Twenty-eight.

12              **THE COURT:**  How far did you go in school?

13              **THE DEFENDANT:**  Finished high school.

14              **THE COURT:**  And can you read and write English?

15              **THE DEFENDANT:**  Yes.

16              **THE COURT:**  And you feel like you've understand my

17   questions, and that you're competent to proceed with this

18   hearing?

19              **THE DEFENDANT:**  Yes, sir.

20              **THE COURT:**  And have you been shown a copy of the

21   indictment -- that's just the formal charges against you -- and

22   have you had a chance to discuss these charges with your

23   lawyer?

24              **THE DEFENDANT:**  Yes, sir.

25              **THE COURT:**  And are you satisfied with the advice and

1    the representation that your lawyer has given to you in this

2    case?

3              **THE DEFENDANT:**  Yes, sir.

4              **THE COURT:**  All right.  I find that you've taken

5    advantage of your right of assistance of Counsel.

6              I'm now going to ask the lawyer for the Government to

7    read each of these counts that's pending against you.

8              When she finishes reading each one, you're going to

9    be asked whether you plead guilty or not guilty to it.  So

10   please listen carefully.

11             **MS. PROFIT:**  In the United States District Court,

12   Southern District of Texas, McAllen Division; United States of

13   America versus Daniel Sepulveda; Criminal Number M:20-cr-240-1.

14             Superseding indictment; the Grand Jury charges:

15             "On or about January 17, 2019, in the Southern

16             District of Texas, and within the jurisdiction of the

17             Court, Defendants Daniel Sepulveda, Evaristo

18             Sepulveda, III, Juan Indalecio Garcia, Jose Luis

19             Garcia, and Rene Sepulveda did knowingly and

20             intentionally conspire and agree together and, with

21             other persons known and unknown to the Grand Jury, to

22             possess with intent to distribute a controlled

23             substance.

24             "The controlled substance involved was five kilograms

25             or more of a mixture of a substances containing a

1          detectable amount of cocaine, a Schedule II

2          controlled substance, in violation of Title 21,

3          United States Code, Sections 846, 841(a)(1),

4          841(b)(1)(A)."

5          How do you plead to Count One of the indictment,

6  Daniel Sepulveda; guilty or not guilty?

7           **THE DEFENDANT:**  For conspiracy, not guilty.

8           **THE COURT:**  I'm sorry.  Not guilty on the first one,

9  or guilty?

10          **THE DEFENDANT:**  Yeah, guilty.

11          **THE COURT:**  Guilty, okay.

12          Next, Ms. Profit?

13          **MS. PROFIT:**  "On or about January 17, 2019, in the

14          Southern District of Texas, and within the

15          jurisdiction of the Court, Defendant Daniel

16          Sepulveda, Evaristo Sepulveda, III, Juan Indalecio

17          Garcia, Jose Luis Garcia, and Rene Sepulveda did

18          knowingly and intentionally possess with intent to

19          distribute a controlled substance.

20          "The controlled substance involved was five kilograms

21          or more; that is, approximately 320 kilograms of a

22          mixture of substances containing a detectible amount

23          of cocaine; a Schedule II controlled substance, in

24          violation of Title 21, United States Code, Sections

25          841(a)(1) and 841(b)(1)(a), and Title 18, United

8

1          States Code, Section 2.

2          How do you plead to Count Two of the indictment,

3  Daniel Sepulveda; guilty or not guilty?

4          **THE DEFENDANT:**  Guilty.

5          **THE COURT:**  Under the Constitution and laws of this

6  country, you do have the right to plead not guilty.  And if you

7  plead not guilty, then you have the right to a trial before

8  either a jury or a judge on the charges that are against you.

9          You understand this?

10          **THE DEFENDANT:**  Yes, sir.

11          **THE COURT:**  And at a trial, you would have the right

12  to the assistance of a lawyer.

13          If you could not afford a lawyer, then one would be

14  appointed to represent you at all stages of these proceedings

15  at no cost to you.

16          You understand this?

17          **THE DEFENDANT:**  Yes, sir.

18          **THE COURT:**  If you wanted to plead not guilty, in

19  order to find you guilty, the Government would have to prove,

20  at a trial, by competent evidence and beyond a reasonable

21  doubt, the charges that against you.

22          You understand this?

23          **THE DEFENDANT:**  Yes, sir.

24          **THE COURT:**  And at a trial, you would be presumed

25  innocent.  It would not be your burden to have to prove that

1   you're innocent.

2        You understand this?

3       **THE DEFENDANT:**  Yes, sir.

4       **THE COURT:**  In the course of a trial, the witnesses

5   for the Government would have to come into the courtroom and

6   testify in front of you and your lawyer.

7        Your lawyer could question any of the Government's

8   witnesses; object to any of their evidence; and then you would

9   have the right to present any evidence in defense of these

10   charges that you might want to present.

11        You understand this?

12       **THE DEFENDANT:**  Yes, sir.

13       **THE COURT:**  At a trial, you would also have a right

14   to take the witness stand and testify in your own defense if

15   you desired.

16        However, you cannot be forced to testify or to

17   incriminate yourself and nobody can hold it against you if

18   decided not to testify at a trial.

19        You understand this?

20       **THE DEFENDANT:**  Yes, sir.

21       **THE COURT:**  If I accept your guilty plea, however,

22   you'll be giving up all these rights that I have just mentioned

23   and discussed with you, because there will be no trial in your

24   case.

25        I will simply enter a judgment of guilty and sentence

10

1  you on the basis of your plea of guilty.

2          You understand this; there will be no trial in your

3  case?

4          **THE DEFENDANT:**  Yes, sir.

5          **THE COURT:**  Let's see.  In your case, you understand

6  that I could send you to prison for up to life, with a minimum

7  sentence of at least ten years, and, in addition, I could fine

8  you up to two million dollars?

9          **THE DEFENDANT:**  Yes, sir.

10         **THE COURT:**  So that's on the drug -- are they both

11 drug counts, Ms. Profit?

12         I want to make sure I get --

13         **MS. PROFIT:**  Yes, they're both drug counts; the

14 conspiracy and the substance counts.

15         **THE COURT:**  Okay.  So that's the punishment for each

16 count.

17         And so, in addition to this imprisonment and fine

18 that you face, I'm also required to impose upon you a

19 supervised release term.  And this is a term of supervision

20 that starts as soon as you get out of prison.  So it's in

21 addition to any imprisonment.

22         In your case, the Probation Office could actually

23 supervise you for the remainder of your life.

24         You understand this?

25         **THE DEFENDANT:**  Yes, sir.

11

1          THE COURT:  And I'm also required to impose upon you

2     a $100 special assessment for each count.  So, for you, that

3     would be $200 in special assessments.

4          You understand this?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And have you spoken to your lawyer about

7     these sentencing commission guidelines and how these sentencing

8     guidelines might apply in your case?

9          THE DEFENDANT:  No, we hadn't discussed that.

10         THE COURT:  You've been gone -- maybe he didn't show

11    you this chart that I have.

12         But he talked to you about how many points you might

13    score at, what your offense level might be for a certain amount

14    of drugs; those kinds of things?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Okay.  So that's what the guidelines are.

17         And so your lawyer nor I know exactly where you're

18    going to come out of these guidelines until after the Probation

19    Office prepares the Presentence Report about you.

20         You understand this?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And then, once the Probation Office does

23    prepare this report and determines exactly which of these

24    sentencing ranges does apply in your case, I may, nevertheless,

25    vary or depart from these guidelines, either up or down, and

1    you would not be able to take back your guilty plea.

2          You understand this about the advisory non-binding

3    nature of these guidelines?

4          **THE DEFENDANT:**  Yes, sir.

5          **THE COURT:**  Has anybody guaranteed to you or promised

6    you the sentence I'm going to give you in your case?

7          **THE DEFENDANT:**  No, sir.

8          **THE COURT:**  So this offense is a felony offense -- or

9    these offenses.

10          If I accept your guilty pleas, then you're going to

11    be adjudged guilty of felony offense, which may have some

12    additional consequences to you.  Because you're going to lose

13    certain rights.

14          You're going to lose the right to ever possess a

15    firearm or ammunition; you'll lose the right to vote or serve

16    on juries; you'll lose the right to certain Government licenses

17    and benefits; and if you're not a citizen of this country, then

18    you would lose your right to be here or to come here, and you'd

19    be deported back to your own country.

20          You understand these additional consequences?

21          **THE DEFENDANT:**  Yes, sir.

22          **THE COURT:**  All right.  And so I've been advised

23    there's no plea agreement in this case.  So given now all these

24    rights that I've discussed with you here this morning,

25    Mr. Sepulveda, would you like to change your mind, and take

13

1    back any of your guilty pleas?

2              **THE DEFENDANT:**  No, sir.

3              **THE COURT:**  No.  All right.  Then I'm now going to

4    ask the lawyer for the Government to describe for me the facts

5    in your case that the Government was prepared to prove if you

6    had advanced forward to a trial.

7              It's important to listen carefully.  Because when she

8    finishes describing all these events about you, I'm going to

9    ask you if what she said was correct or not.

10             All right, Ms. Profit?

11             **MS. PROFIT:**  On or about January 17, 2019, Defendant

12   Daniel Sepulveda entered into an agreement with Evaristo

13   Sepulveda, Juan Indalecio Garcia, Jose Luis Garcia, and Rene

14   Sepulveda to possess with intent to distribute cocaine.

15             In furtherance of this agreement, at the direction of

16   Jose Luis Garcia, Daniel Sepulveda traveled to the Rio Grande

17   River with Juan Indalecio Garcia, Evaristo Sepulveda, Luis

18   Sepulveda, and Rene Sepulveda to pick up a load of cocaine that

19   was being imported into the United States from Mexico.

20             In furtherance of this agreement, Daniel Sepulveda

21   picked up 320 kilograms of cocaine from the river.

22             As he approached (indisc.)of Garcia's property, he

23   was spotted by the United States Border Patrol, and fled back

24   to the river, and crashed into the river.  He then fled into

25   Mexico.

14

1          With respect to Count Two, he possessed with intent

2   to distribute 320 kilograms of cocaine in the ATV -- his ATV

3   with the intent to distribute to other individuals.

4          **THE COURT:**  Mr. Sepulveda, were these facts stated by

5   the United States Attorney all true and correct?

6          **THE DEFENDANT:**  Not all of it, but some of it though.

7          **THE COURT:**  Well --

8          **THE DEFENDANT:**  (Indisc.).

9          **THE COURT:**  Okay.  What is it that you would clarify

10  or disagree with?

11         **THE DEFENDANT:**  Yeah.  I was there with my brother

12  that agreed.  It was (indisc.).

13         **MS. PROFIT:**  I'm sorry, your Honor.  I can't hear

14  him.

15         **THE COURT:**  Yeah.  I had trouble hearing you also,

16  Mr. Sepulveda.  If you could --

17         **THE DEFENDANT:**  That I agree, by myself, that I did

18  that.  I run for the (indisc.).

19         **THE COURT:**  All right.  So you're the one that agreed

20  to turn around and go into the river?

21         **THE DEFENDANT:**  Yeah.

22         **THE COURT:**  But the others were in agreement, though,

23  to help load and haul the drugs as well, correct?

24         I mean, this was more than just you; this was part of

25  a conspiracy, correct?

1          **THE DEFENDANT:**  It was (indisc.) all me.

2          **THE COURT:**  But so the Garcias and your brother, were

3    they aware that there were drugs that were being distributed

4    here?

5          **THE DEFENDANT:**  I just talked to my lawyer who

6    (indisc.).

7          **THE COURT:**  All right.  I mean, because you pled a

8    conspiracy.  And there has to be at least two people to be a

9    conspiracy.

10         So you had to agree with somebody else to do this.

11         **THE DEFENDANT:**  My brother (indisc.).

12         **THE COURT:**  If you would like to talk to your lawyer,

13   we can arrange for you to have a private conversation.

14         Would you like to talk to your lawyer privately right

15   now?

16         **THE DEFENDANT:**  Yes.

17         **THE COURT:**  Okay.  So then --

18         **MS. PROFIT:**  Your Honor, the Government's fear is

19   that we believe he is being set up to take responsibility for

20   everyone else.

21         And we would have not accepted the plea under --

22   under these circumstances.

23         **THE COURT:**  All right.

24         **MS. PROFIT:**  (Indisc.).

25         **THE COURT:**  Well, let him talk to his lawyer.

16

1          And I know -- I presume you-all agreed to this

2     factual basis -- or at least you provided it earlier.

3          So, Mr. Sanchez, I'm going to give you -- I'm going

4     to have you and your client placed in a breakout room, so that

5     nobody else can hear, so that you-all can discuss this factual

6     basis.

7          **MR. SANCHEZ:**  Yes, your Honor.

8          **THE COURT:**  All right.  So, Ms. Rodriguez, if you

9     could take care of that for us.

10          **THE CLERK:**  Sure, Judge.

11        **(Court in Recess)**

12          **THE COURT:**  All right.  I'm showing that Brooks is

13     still on mute.

14          There we go.  All right.

15          So we're back on the record in 20-cr-240; U.S.A.

16     versus Dan Sepulveda.  We had a recess where Sepulveda and his

17     attorney were able to speak privately.  So now we're back on

18     the record.

19          Again, we were trying to clarify the factual basis

20     for this plea.  Probably the -- I don't know.

21          Mr. Sanchez, is there something you want to clarify?

22     Or I could have Ms. Profit just read it again?

23          **MR. SANCHEZ:**  Judge, if I may.  I spoke to my client.

24     And he completed the possession.  Because he says that's a true

25     fact.

1          The conspiracy, he says it's not true.  So he doesn't

2    want to plead guilty to the conspiracy.

3          So I'm kind of -- I'm in a quandary here.  If the

4    Government won't let him plea to one, and not on the other -- I

5    mean, I think the punishment is the same for both.

6          **THE COURT:**  I mean, it is the same.  But it's hard to

7    believe this quantity didn't involve another person that he was

8    getting it from or that he was going to deliver it to.

9          **MR. SANCHEZ:**  All right.  But the people named, I

10   don't believe he feels are properly implicated -- if I can say

11   that.  So --

12         **THE COURT:**  Ms. Profit, you're on mute.

13         **MS. PROFIT:**  Your Honor, then he's going to have to

14   go to trial on the conspiracy.

15         We're not going to accept the plea.  We believe

16   that -- that there are strings being pulled in the background

17   to get him to accept -- the only responsibility where there are

18   other family members that are very heavily involved.

19         We have evidence to that extent.  And that has been

20   my position from the very first.

21         If he wants to -- if he (indisc.) the plea to the

22   possession, that's fine.  But the Government is going to

23   proceed forward in trying him on the conspiracy count.

24         **THE COURT:**  So, Mr. Sanchez, are you okay with that?

25         I mean, there's no plea agreement.  So he can plea to

18

1    one substantive count.  But unless they've agreed to dismiss

2    the remaining charge, they can still proceed with them.

3              **MR. SANCHEZ:**  I understand, Judge.  I've explained

4    that to my client.  And I guess he wants to go to trial on the

5    conspiracy.

6              **THE COURT:**  Okay.  Is that correct, Mr. Sepulveda?  I

7    know you've been listening to us.

8              **THE DEFENDANT:**  Yes, sir.

9              **THE COURT:**  All right.  So just to make sure we have

10   the factual basis correct -- what you admit to.

11             So you admit that you possessed these drugs with the

12   intent to distribute them?

13             **THE DEFENDANT:**  Yes, sir.

14             **THE COURT:**  All right.  And you knew it was illegal

15   to possess these drugs?

16             **THE DEFENDANT:**  Yes, sir.

17             **THE COURT:**  All right.  Then it's the finding of the

18   Court in this case this Defendant is competent and capable of

19   entering an informed plea.

20             He understands the nature of the charge against him,

21   the consequences of his plea of true, the maximum punishment he

22   faces, and that this plea of true -- I'm sorry -- this plea of

23   guilty.

24             It's a knowing and voluntary plea supported by facts

25   that contain the elements of the offense.

19

1           I therefore accept his plea of guilty.  He is

2  adjudged guilty of the offense.

3           All right.  So, normally, I would order a Presentence

4  Report at this time.  But because you're going to proceed to

5  trial on the other, I don't know that that's the best thing to

6  do.

7           We'd have sort of a partial Presentence Report.  I'm

8  just not sure what probation --

9           Ms. Ramirez, are you here from Probation?

10          **THE PROBATION OFFICER:**  Yes, your Honor.

11          **THE COURT:**  What does Probation prefer?

12          I mean, you-all want to do a Presentence Report

13  already, even though other charges still remain pending, or

14  just wait and do this all at one time at the end?

15          **THE PROBATION OFFICER:**  Your Honor, I've never

16  encountered this situation.

17          If I could get -- I know there's a supervisor in the

18  building.  If I could get maybe two minutes and check.

19          We can still write -- my understanding is, we can

20  still write the PSR on what he pled guilty to.

21          **THE COURT:**  Sure.

22          **THE PROBATION OFFICER:**  And that's it.

23          And then if that is -- I can double-check.  I think I

24  would want to double-check to make sure with the supervisor.

25          **THE COURT:**  All right.  Well, let me do this:  I'm

1   going to go ahead and have this order for a Presentence Report

2   issued.  I can always vacate it later.

3            **THE PROBATION OFFICER:**  Okay.

4            **THE COURT:**  So I'm going to, anyway, have the order

5   issued.  It's already prepared.

6            Basically, it will require the Presentence Report be

7   completed by the 13th of October; any objections by the 27th,

8   which is two weeks later; and then a final report two weeks

9   after that, or November 10th.

10           And then Mr. Sepulveda will be set for sentencing on

11   this one count, for November 17th, at 9:00 a.m.

12           So I'm going to put him back on the docket with the

13   others who asked to be reset for next month.  We're not having

14   jury trials this month because the Coronavirus pandemic.  So

15   I'll move him to next month.

16           We are trying to get everything put together with all

17   of our protective equipment and stuff in the courtrooms to

18   actually start trials next month.  But some of that equipment

19   is on back order.

20           I don't know if it's going to be here.  So just FYI.

21   It may be October; but it most likely will not be.

22           But that's our goal is to start back up next week --

23   next month.

24           There are others in the queue that are older than

25   this.  So probably the older cases are going to go first --

21

1  just for planning purposes.

2          All right.  That concludes this hearing.  There being

3  nothing further, everybody's excused at this time.

4          Thank you you-all for attending.

5          **MR. SANCHEZ:**  Judge?

6          **THE COURT:**  Uh-huh?

7          **MR. SANCHEZ:**  May I make a request?

8          **THE COURT:**  Sure.

9          **MR. SANCHEZ:**  My client is being housed in Brooks

10  County.  There's a co-Defendant in La Villa.

11          Counsel for them are farther from them, and I'm

12  farther from mine.  And I don't know if maybe they should be

13  swapped.  That way -- but every time I need to go see him, it's

14  an hour-and-a-half drive there and an hour-and-a-half drive

15  back.

16          And it's kind of the same of the others.  And Brooks

17  County's closer for them to visit their clients, and La Villa

18  will be closer for me.

19          I don't know if the Court could entertain and

20  consider maybe ordering a swap.

21          **MS. PROFIT:**  Your Honor, we have serious problems

22  with respect to all of the Defendants in this case.

23          As you know -- I mean, can tell, from one of the

24  charges in this indictment, they were so bold as to shoot the

25  cameras -- the Border Patrol cameras out.

22

1          We've also founds lists of people.  And we believe

2   that they may well have been involved -- that this organization

3   involves in disappearing people from Mexico.

4          So we have considerable concerns as to where each of

5   these individuals are housed, based on the nature of this

6   particular conspiracy.

7          **THE COURT:**  And you said there was somebody at La

8   Villa.  His Counsel is from where; Corpus or San Antonio or --

9          **MR. SANCHEZ:**  They're from Rio Grande City, your

10  Honor.  And so it's closer from Rio Grande City to Brooks

11  County, then to La Villa.  And it's closer for me to La Villa

12  and Brooks County.

13         I mean, it's just -- I mean, you're housing them, and

14  the Marshals are housing them.  It's not the Government housing

15  them with the Marshals -- for the Court.

16         And so all I'm asking is, can you just swap those, so

17  that it's closer for both Counsel to visit their clients?

18         **THE COURT:**  So I'll visit with them.  But I will also

19  tell you that there's been no prisoner movement because of the

20  quarantine situations.

21         So even though I've, like, sentenced people, and

22  they're ready to go to BOP, there's no movement.  Because they

23  don't want to accidently send somebody to another institution

24  who might be infected and spread it there.

25         New arrestees are quarantined for two or three weeks.

23

1    And so I know any movement would at least require a lockdown.

2          So let me talk to the Marshals.  But I will just tell

3    you, they're reluctant to move anybody at this time because of

4    the virus.

5          **MR. SANCHEZ:**  I understand, your Honor.  I was --

6          **THE COURT:**  Sure.

7          **MR. SANCHEZ:**  -- making the request.

8          **THE COURT:**  All right.  I'll pass that along.

9          All right.  Thank you very much for attending.

10   Everybody's excused at this time.

11         **MS. PROFIT:**  Thank you, your Honor.

12         **MR. SANCHEZ:**  Thank you.

13         **(Proceedings Concluded)**

14

15

16

17

18

19

20

21

22

23

24

25

24

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>October 14, 2020</u>

          **Signed**                                            **Dated**


                    *TONI HUDSON, TRANSCRIBER*